COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP506**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV1579

IN COURT OF APPEALS
DISTRICT IV

NORTHWESTERN STONE, LLC,

    PLAINTIFF-APPELLANT,

V.

CITY OF MIDDLETON,

    DEFENDANT-RESPONDENT.

        APPEAL from an order of the circuit court for Dane County: DIANE SCHLIPPER, Judge. *Affirmed.*

        Before Graham, P.J., Nashold, and Taylor, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Northwestern Stone, LLC appeals a circuit court order granting summary judgment in favor of the City of Middleton (the City) in Northwestern's action challenging the City's right to condemn Northwestern's property under WIS. STAT. § 32.05 (2023-24).[1] Northwestern argues that the City impermissibly condemned more of Northwestern's property than was necessary to improve the adjacent public roadway. Northwestern further contends that the City violated WIS. STAT. § 32.015, which prohibits municipalities from using their powers of condemnation to establish a recreational trail, bicycle lane, bicycle way, or pedestrian way. We conclude that Northwestern has failed to establish a genuine dispute of material fact regarding either of the issues raised in this appeal and has also failed to show that the circuit court erred in granting summary judgment in favor of the City. Accordingly, we affirm the circuit court order.

## BACKGROUND

¶2 We recount the basic facts below and add additional facts as needed in the analysis. Beginning in 2017, the City began the process of redesigning portions of Pleasant View Road. The project involved "reconstruct[ing] and expand[ing] the existing rural two-lane roadway into a four-lane divided urban arterial" with several roundabouts at intersections. In November 2020, the City's common council adopted an initial transportation project plat (TPP), which constituted the relocation order required to initiate condemnation proceedings and also defined the boundaries of the necessary property acquisitions of Northwestern's real property.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

¶3      Northwestern owns two non-adjacent parcels of real property along the west side of Pleasant View Road and also holds easement rights over a third parcel.  On June 3, 2022, the City sent Northwestern three jurisdictional offers to acquire interests in the three parcels.  Northwestern did not accept these offers.

¶4      On June 28, 2022, Northwestern filed an action pursuant to WIS. STAT. § 32.02(5) to contest the City's right of condemnation.  As grounds for its action, Northwestern alleges that "the City has expressed its intent to exercise its power of eminent domain to acquire portions of the Subject Propert[ies] for the purpose of constructing what may only be described as a recreational trail, a bicycle way and/or a pedestrian way."  Accordingly, Northwestern alleges that the jurisdictional offers were invalid under WIS. STAT. § 32.015, which prohibits municipalities from condemning land in order "to establish or extend a recreational trail[,] a bicycle way, … a bicycle lane, … or a pedestrian way."[2]

¶5      After the circuit court entered a scheduling order with a deadline for submitting dispositive motions, the parties submitted two stipulations to extend these deadlines pending our decision in *Sojenhomer, LLC v. Village of Egg Harbor*, 2023 WI App 20, 407 Wis. 2d 587, 990 N.W.2d 267 (*Sojenhomer I*).  In that appeal, we addressed whether the provision of WIS. STAT. § 32.015 that bars municipalities from condemning land to designate a "pedestrian way" also bars municipalities from condemning land to construct a sidewalk.  *Id.*, ¶¶2-3.  In a decision issued on March 14, 2023, we concluded that a sidewalk is a pedestrian way within the meaning of this statute.  *Id.*, ¶3.

---

[2] Northwestern further alleged that the City's condemnation action was barred by WIS. STAT. § 32.51 and Article XI, Section 3a, of the Wisconsin Constitution.  Northwestern does not argue these grounds on appeal, so we do not discuss them further.

¶6      On May 15, 2023, Northwestern filed a motion for summary judgment that relied on our determination in *Sojenhomer I*. Northwestern presented evidence that, at the time of the City's jurisdictional offers, the City planned to construct 10-foot wide side paths around the vehicular roundabout to be constructed on Northwestern's condemned property in order to allow for bicycle travel in both directions. After Northwestern filed its action challenging the condemnation, Northwestern averred that the City replaced the 10-foot side paths with standard, 5-foot sidewalks, a plan which the City also ultimately abandoned. Northwestern argued that our decision in *Sojenhomer I* prohibited the City from condemning its land to construct a sidewalk.

¶7      In August 2023, after Northwestern's summary judgment motion was fully briefed, our supreme court granted a petition to review *Sojenhomer I*. The circuit court suspended proceedings in Northwestern's action pending the supreme court's decision. Ultimately, our supreme court reversed *Sojenhomer I*, concluding that the statutory definition of a "pedestrian way" does not include a sidewalk, and therefore WIS. STAT. § 32.015 does not prohibit a municipality from condemning property to construct a sidewalk. *See Sojenhomer LLC v. Village of Egg Harbor*, 2024 WI 25, ¶¶2-3, 412 Wis. 2d 244, 7 N.W.3d 455 (*Sojenhomer II*).

¶8      Following the decision in *Sojenhomer II*, the circuit court entered a new scheduling order permitting the parties to file supplemental briefs and affidavits. As part of Northwestern's supplemental briefing, Northwestern presented evidence that the City constructed a sidewalk or multi-use path on every other portion of Pleasant View Road except for the portion along Northwestern's condemned property. Northwestern argued that because the City was not using the property it had acquired from Northwestern for a pathway or sidewalk, the

City had condemned more land than it needed. Northwestern further argued that the City condemned its property in order to construct a bicycle lane in violation of WIS. STAT. § 32.015.

¶9 The circuit court denied summary judgment in Northwestern's favor, concluding that Northwestern had failed to make a prima facie case regarding either issue. Instead, the court granted summary judgment in favor of the City on the ground that the record established that there were no issues of material fact for trial supporting Northwestern's argument that the City acquired its property for an improper purpose under WIS. STAT. § 32.015. Therefore, the City was entitled to summary judgment as a matter of law pursuant to WIS. STAT. § 802.08(6). Northwestern appeals.[3]

## STANDARD OF REVIEW

¶10 We review the circuit court's decision to grant summary judgment "independently, applying the same standards of review as did the circuit court." *Admanco, Inc. v. 700 Stanton Drive, LLC*, 2010 WI 76, ¶14, 326 Wis. 2d 586,

---

[3] The City moved to strike two portions of Northwestern's reply brief. In response to this motion, Northwestern withdrew one of the disputed statements that the TPP contains design details. Accordingly, we disregard Northwestern's erroneous references to design details in the TPP that appear at pages 10 and 12 of its reply brief. In its response to the motion to strike, Northwestern also sought to correct the record to make clear that the arguments on pages 10 and 12 of its reply brief rely on a different document, WisDOT's Proposed Plan of Improvement (PPI). Northwestern argues, without authority, that the PPI should be treated as "the best evidence of the purpose for the taking." Because Northwestern failed to make this argument in its chief appellate brief and failed to develop it in Northwestern's response to the motion to strike, we decline to consider it. *Matter of Bilsie's Est.*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508, 512 (Ct. App. 1981) ("We will not, as a general rule, consider issues raised by appellants for the first time in a reply brief."); *see also State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (courts need not consider undeveloped legal arguments).

We address the remaining argument in the City's motion to strike in footnote 4.

786 N.W.2d 759. Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶11 Northwestern's summary judgment motion requires us to interpret and apply WIS. STAT. § 32.015. "The interpretation and application of statutes are questions of law that we decide independently of the [circuit court's] decision[], … but benefitting from its discussion[] and analys[i]s." *Admanco, Inc.*, 326 Wis. 2d 586, ¶15.

## DISCUSSION

¶12 On appeal, Northwestern argues that the circuit court erred in granting summary judgment in favor of the City because there are genuine disputes of material fact concerning: (1) whether the City took more land than it needed; and (2) whether the City condemned Northwestern's properties for an impermissible purpose under WIS. STAT. § 32.015. As part of its second argument, Northwestern contends that the court erred by not considering the purpose of the City's taking at the time of its jurisdictional offers. We consider, and reject, each argument in turn.

### A. Scope of Condemnation

¶13 Northwestern's first argument is that there is a genuine dispute of material fact as to whether the City condemned more of Northwestern's properties than was necessary. A taking is necessary if it is "reasonably requisite and proper for the accomplishment of the public purpose for which the property is sought."

*Falkner v. Northern States Power Co.*, 75 Wis. 2d 116, 132, 248 N.W.2d 885 (1977). "[A] court will not disturb a determination of necessity in the absence of fraud, bad faith or gross abuse of discretion." *Id.*

¶14 In arguing that the City's taking was not necessary, Northwestern relies on two affidavits from Jeff Thieding, a construction project engineer who oversees road construction projects similar to the Pleasant View Road reconstruction project. Thieding avers that the City did not need to take as much property from Northwestern as it did, and further avers that the City did not need to take Northwestern's land in fee but could have used a temporary limited easement instead.

¶15 Northwestern's summary judgment submissions do not establish that the City's taking was not necessary nor do they create a genuine factual dispute on this issue. The preliminary problem for Northwestern is that, "[i]n determining necessity neither the legislature nor its delegate is limited to takings that are absolutely or indispensably necessary." *Falkner*, 75 Wis. 2d at 132. Instead, we evaluate whether the taking is "reasonably requisite and proper for the accomplishment of the public purpose for which the property is sought." *Id.*

¶16 To satisfy this standard, the City relies on the affidavit of its engineer, Shawn Stauske, which addresses why the City decided to condemn the amount of property that it acquired from Northwestern. Specifically, Stauske avers that, in condemning land for roadways, the City attempts "to establish uniform widths" along sections of roadway "wherever possible." This uniformity facilitates the City's management of rights-of-way, by making various aspects of the process such as record-keeping, mapping, and maintenance easier, and also makes it less expensive to install and manage utilities. Regarding the width of the

City's uniform condemnation, Stauske averred that the width selected by the City serves several public purposes, including allowing the City to create greenspace on the side of the road; providing more safety and flexibility for tree plantings; spacing utilities an appropriate distance from trees; creating space for snowplows to store snow; providing a clear zone area for vehicles that leave the roadway; and reserving space for potential future bus pull-out areas. We agree with the City that Stauske's affidavit establishes that the taking was "reasonably requisite and proper for the accomplishment of the public purpose for which the property [wa]s sought[,]" *see* **Falkner**, 75 Wis. 2d at 132, namely, "to improve the safety and function of Pleasant View Road."

¶17 Northwestern argues that these averments are "refuted" by other aspects of Stauske's affidavit, because the affidavit "is replete with references to the city's 'preferences, policies, desires and likes.'" Northwestern does not point to any legal authority to suggest that a City's preferences, policies, desires, and likes are insufficient to establish that the taking is "reasonably requisite and proper for the accomplishment of the public purpose for which the property is sought." ***Id.***

¶18 Northwestern argues that we should not rely on Stauske's affidavit, because Stauske merely expressed his opinion that the City would have condemned the same amount of land regardless of whether it intended to construct a pathway or sidewalk. Northwestern's argument misses the mark because Stauske's affidavit contains more than mere opinion. In concluding that the scope of the City's taking was reasonably requisite and proper, we are relying on the sections of Stauske's affidavit that describe the City's reasons for the uniform measurements that it established when condemning property for the road reconstruction, including Northwestern's property. All of these reasons support

Stauske's assertion that the City would have condemned the same amount of Northwestern's property regardless of whether it had immediate plans to construct a pathway or sidewalk along that property.

¶19    Northwestern further argues that the City's claimed reasons for the amount of fee taking are "disingenuous" due to changes that the City made to the project after Northwestern filed this action.  Specifically, the City eliminated the proposed multi-use path and then the proposed sidewalks.  The City explains that it planned to build a sidewalk but attempted to delay that plan following our decision in *Sojenhomer I*.  Due to cost, the City was ultimately unable to wait to begin construction for our supreme court to issue its decision in *Sojenhomer II*, but the City intends to construct a sidewalk eventually now that it has clarity regarding its legality.[4]  Nothing in the City's attempt to comply with WIS. STAT. § 32.015 strikes us as disingenuous, nor does Northwestern develop any argument that the City's conduct in attempting to comply with unsettled law rises to the level of fraud, bad faith, or gross abuse of discretion.  *See Falkner*, 75 Wis. 2d at 132.

---

[4] In its reply brief, Northwestern argues that the City has violated the sham affidavit rule because this aspect of Stauske's supplemental affidavit contradicts his deposition testimony two months earlier.  *See Yahnke v. Carson*, 2000 WI 74, ¶21, 236 Wis. 2d 257, 613 N.W.2d 102 (an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained).  The City moves to strike this portion of Northwestern's reply.

We deny the City's motion to strike and instead reject Northwestern's argument on the merits.  In the portion of the deposition transcript cited by Northwestern, Stauske testified that "it was City policy" to construct a sidewalk but that he was not inclined to construct a sidewalk as part of the current road construction contract.  Then, when asked by Northwestern to confirm that "at this point, the City does not have plans to install the sidewalk at any time," Stauske answered, "[t]hat is correct."  The cited testimony is not inconsistent with Stauske's supplemental affidavit, which avers that "the City has not yet had any opportunity to discuss when this section of sidewalk would get installed."  We therefore reject Northwestern's argument that the City is relying on a sham affidavit.

¶20 Northwestern also argues that the City's conduct demonstrates an "utter disregard for the necessity of the use of Northwestern's property." *See Watson v. Town of Three Lakes*, 95 Wis. 2d 349, 355, 290 N.W.2d 520 (Ct. App. 1980) (In an action challenging a Chapter 32 condemnation, "[a] reviewing court may find an [erroneous exercise] of discretion where there is utter disregard for the necessity of use of the land."). Northwestern does not cite any legal authority or develop an argument in support of its characterization that the City's conduct rises to the level of "utter disregard" under *Watson*. Accordingly, we reject this argument as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (a court need not consider arguments that are unsupported by legal citations or are otherwise undeveloped). Moreover, as noted above, Stauske's affidavit establishes that the City has several reasonable grounds for the amount of property it condemned. Thus, we reject Northwestern's contention that the City's conduct in exercising its eminent domain powers can be characterized as demonstrating "utter disregard" for the necessity of the portion of Northwestern's property it condemned.

¶21 In sum, we see no argument from Northwestern that would undermine our determination, noted above, that the City's decision to conduct a fee taking of a uniform width of property was "reasonably requisite and proper for the accomplishment of the public purpose for which" Northwestern's property was condemned. *See Falkner*, 75 Wis. 2d at 132. Accordingly, we conclude that Stauske's averments establish as a matter of law that the City's taking was reasonably necessary. *See id.* ("[T]he determination made of the necessity of [a] taking is beyond question if there is any reasonable ground to support it.").

### B. Impermissible Purpose

¶22    Northwestern's second argument is that there is a genuine dispute of material fact regarding whether the City impermissibly condemned Northwestern's property to create a bicycle lane, in violation of WIS. STAT. § 32.015. Northwestern argues that it is undisputed that, at the time of the City's jurisdictional offer to Northwestern, it intended to use a portion of Northwestern's property to construct a bicycle lane or way. Northwestern argues that subsequent changes to the scope or purpose of the taking are irrelevant to whether the City's conduct violates § 32.015, because the taking contemplated by the jurisdictional offer controls. Northwestern concedes that "[t]here are no common law authorities directly on point on this issue" but argues that our supreme court has "made it abundantly clear" that an action under WIS. STAT. § 32.02(5) focuses on the taking described in the jurisdictional offer. *See DEKK Prop. Dev., LLC v. Wisconsin DOT*, 2023 WI 30, ¶18, 406 Wis. 2d 768, 988 N.W.2d 653.

¶23    The City argues that our supreme court's decision in *DEKK* does not support Northwestern's argument that the purpose of the taking at the time of the jurisdictional offer controls, because *DEKK* only stands for the proposition that "[a]ctions under [WIS. STAT.] § 32.05(5) are limited to issues 'pertaining to the condemnation of the property described in the jurisdictional offer.'" *Id.* (citation omitted). *DEKK* does not stand for the broader proposition that a municipality's plan must be final at the time of the jurisdictional offer. In its reply brief, Northwestern does not respond to the City's characterization of *DEKK*, and so we deem the City's argument to be conceded. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578.

¶24 Northwestern also argues that, due to the short timeframe for filing a challenge under WIS. STAT. § 32.05(5), the right to challenge a condemnation would be rendered meaningless if the City could simply change the scope of the project upon the filing of an action. Northwestern does not develop this argument with legal authority. We therefore reject as unsupported Northwestern's argument that the purpose of the taking is "irrevocably fixed" at the time of the jurisdictional offer.[5] *See **Pettit***, 171 Wis. 2d at 646.

¶25 Northwestern further argues that it has created a genuine dispute of material fact regarding whether the City has in fact constructed a designated bicycle lane on the land acquired from Northwestern, in violation of WIS. STAT. § 32.015. Northwestern bases this argument on three sets of averments by Thieding. First, various measurements between a solid white line on the roadway to the edge of the blacktop pavement and to the curb are "consistent with it being a designated bicycle lane." Second, the roundabouts have exit and entrance ramps that a bicyclist could use to depart the roadway and travel on the sidewalk. Third, the solid white line at the right side of the road changes to a dashed white line at roundabouts, which "signal[s] to bicyclists that they may shift into the right lane of vehicular travel and also warn[s] vehicles in the right lane that bicyclists may be merging into their lane."

---

[5] Even if we agreed with Northwestern's argument, we see no developed argument that the "purpose" of the project is narrower than the City's stated purpose of "improv[ing] the safety and function of Pleasant View Road." Northwestern does not argue that this stated purpose is impermissible but rather that some of the initial design features could be impermissible. Northwestern has presented no argument that a municipality should be locked into every design choice at the time of the jurisdictional offer, and imposing such a requirement on municipalities strikes us as impractical.

¶26 These averments, taken as true for the purpose of summary judgment, are not sufficient to create a genuine dispute of material fact regarding whether the City has constructed a "designated bicycle lane" within the meaning of WIS. STAT. § 32.015. That statute provides in relevant part that "[p]roperty may not be acquired by condemnation to establish or extend … a bicycle lane, as defined in [WIS. STAT. §] 340.01(5e)." In turn, that statutory provision defines a bicycle lane as "that portion of a roadway set aside by the governing body of any [municipality] for the exclusive use of bicycles, electric scooters, electric personal assistive mobility devices, or other modes of travel where permitted under [WIS. STAT. §] 349.23(2)(a), and so designated by appropriate signs and pavement markings." § 340.01(5e). Finally, § 349.23 sets forth a specific process for a municipality to use when designating a bicycle lane for the exclusive use of bicycles and other specified mobility devices. Among other things, this process requires the City to designate the bicycle lane by ordinance. *See* § 349.23(1). The City contends that, taken together, these statutory provisions establish that the mere fact that "features of a highway project 'could' be used by bicycles" is not enough to show that the City has designated a bicycle lane in violation of § 32.015.

¶27 Here, the City asserts that it has not adopted any ordinance designating the property acquired from Northwestern as a bicycle lane, as required by the relevant statutory provisions. Instead, the only evidence in the record to support Northwestern's argument is a single page in the City's comprehensive plan "which indicates a desire for an on-street bike lane in this area." The City argues that a comprehensive plan is not an ordinance, so Northwestern's argument that the portion of the roadway at issue is a "designated" bicycle lane fails as a matter of law.

¶28 Northwestern does not address these aspects of the City's arguments in its reply brief. Instead, Northwestern appears to concede the point, stating that the question of what the City actually constructed is "irrelevant" to whether the City condemned Northwestern's land for an improper purpose. Northwestern argues that the only question is whether the City intended to construct a designated bicycle lane at the time of the jurisdictional offer. We have already rejected Northwestern's argument on this issue as unsupported.

¶29 For these reasons, we reject Northwestern's argument that the City condemned Northwestern's property for an impermissible purpose.

¶30 Because we have rejected Northwestern's arguments that there is any genuine factual dispute for trial, we conclude that the circuit court properly granted summary judgment in favor of the City. *See* WIS. STAT. § 802.08(6) ("If it shall appear to the [circuit] court that the party against whom a motion for summary judgment is asserted is entitled to a summary judgment, the summary judgment may be awarded to such party even though the party has not moved therefor.").

## CONCLUSION

¶31 For the foregoing reasons, we reject Northwestern's arguments that the circuit court erred in granting summary judgment in favor of the City. Instead, we affirm the circuit court's order dismissing this action.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

14